Filed 1/22/21  In re J.T. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re J.T., a Person Coming Under the Juvenile Court Law. | C091299 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>T.W.,<br><br>Defendant and Appellant. | (Super. Ct. No. STKJVDP20180000283) |

T.W., mother of the minor (mother), filed a petition in the juvenile court requesting modification of an order terminating her reunification services.  (Welf. & Inst. Code, §§ 388, 395.)[1]  The juvenile court denied the petition and mother appeals.  We will affirm the juvenile court's order.

BACKGROUND

Two-year-old J.T. (the minor) came to the attention of the San Joaquin County Human Services Agency (Agency) on July 25, 2018, when mother, who was waiting to meet with an eligibility worker at the Agency building, ignored the minor for an extended period of time while he ran around the building, sometimes out of her direct sight.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

Thereafter, mother was observed yelling and screaming at the minor, slapping the minor in the face with an open hand hard enough to cause the minor to lose his balance and fall to the ground, and forcefully grabbing the minor by his arm and dragging him while he continued to be off-balance.

When confronted by a social worker, mother was distraught and unfocused and was heard telling law enforcement that the minor was hard to deal with and she was irritated her eligibility worker was not in the office. Mother explained she became very frustrated and overwhelmed caring for the minor. Mother also shared her history with Child Protective Services (CPS), explained that she had been "clean" since 2015, and stated she was living at the Gospel Center Rescue Mission but was in the process of moving to a new location. An emergency protective order was issued by the sheriff's department and the minor was detained that day.

On July 27, 2018, the Agency filed a petition pursuant to section 300. As to mother, the petition alleged failure to protect the minor pursuant to subdivision (b) based on the events observed two days before. The petition further alleged prior dependency proceedings in 2012 involving mother and five of the minor's maternal half-siblings based on mother's substance abuse, lack of suitable housing, history of mental illness, and extensive CPS history. Three of the prior proceedings resulted in adoptions following termination of mother's parental rights; one resulted in dismissal due to guardianship; and one resulted in dismissal because the child was a non-minor dependent. In addition, the petition alleged abuse of siblings pursuant to subdivision (j) based on mother's 2012 dependency cases related to the minor's half-siblings.

The petition also alleged no provision for support pursuant to section 300, subdivision (g) as to J.T.S. (father), who is not a party to this appeal. Father will only be mentioned in this opinion where relevant to the issues raised by mother.

The Agency reported that the minor's adult half-sibling, D.G., requested placement of the minor. The Agency further reported that mother received extensive

services during her previous dependency cases, including parenting education and domestic violence treatment which she completed, and substance abuse treatment and individual counseling which she failed to complete resulting in termination of her reunification services in July 2014. Due to mother's lengthy history of mental health issues, domestic violence, substance abuse, and homelessness, the Agency determined the minor was at risk of harm, thus necessitating placement in protective custody.

On July 30, 2018, the juvenile court ordered the minor detained with supervised visits for mother.

The Agency's disposition report stated the minor had been placed with his adult paternal half-sister. Due to concerns regarding the minor's display of tantrum outbursts and aggressive behaviors, and speculation that the minor's behaviors were related to his limited ability to communicate effectively, the minor was provided services to strengthen his social skills.

Mother reported having been diagnosed with bipolar disorder for which she had been taking medication since 2008, and stated she attended all of her mental health appointments. Mother disclosed she had a history of substance abuse, including marijuana and methamphetamine. She completed a 90-day program at Recovery House in 2012 and 2015, and a six-month residential treatment in 2013. However, she did not complete the aftercare program and relapsed shortly thereafter. Mother stated she met father at Recovery House in 2015 after he served a 12-year prison sentence. Their relationship was fraught with verbal abuse by father, who had a history of mental health issues and was currently incarcerated in a mental health prison facility until 2026.

Mother admitted she was inappropriate with the minor but adamantly denied hitting him in the head or causing him to fall over, claiming she was frustrated but would never hurt the minor. The social worker reported that mother was emotionally erratic, quickly becoming angry and then calm and apologetic. Mother had difficulty focusing on the minor, instead focusing on her distrust of CPS and her belief that the court would

3

remember her prior cases and not allow her to reunify with the minor despite assurances otherwise by the social worker. However, the social worker noted that, in the past few weeks, mother made considerable progress, communicating in a calm manner with no concerning outbursts, engaging in services, and improving the quality of her visits with the minor.

Mother initially struggled during visitation and appeared to be suffering from emotional distress which impacted the visits. At times, she also displayed mental instability. She was easily agitated, she fixated on details of the case, and she did not appropriately direct her attention to the minor. However, over time, mother showed significant improvement and was much more attentive, engaged, and emotionally stable during visits. As a result, the supervision requirement was lifted and the length of visits was beginning to increase.

As of the date of the report, mother had been engaged in individual counseling for several weeks and appeared motivated to address her issues, but she complained that the dependency case was based on her past behaviors and was unfair. She was initially dropped from the parenting program due to absences but was rereferred and had completed five classes without any absences. The Agency reported that in order for mother to reunify with the minor, it would be necessary for her to stabilize her mental health and her medication, address her bipolar disorder diagnoses, not isolate, improve her parenting skills, learn to trust CPS, and develop coping skills.

The Agency concluded that, while mother had an extensive history with CPS and the dependency court which included multiple failures to reunify with other children, none of the bypass provisions under section 361.5 applied and mother therefore required services to assist her in ameliorating the issues which led to the removal of the minor, such as "individual counseling to address personal accountability and functioning, grief and loss, anger management, childhood sexual abuse trauma, prior domestic violence

4

trauma, relationship choices, coping with bipolar disorder diagnosis," and other issues identified by mother's counselor or a psychological evaluation to tailor services.

At the jurisdiction hearing on November 13, 2018, the court found true the allegations in the petition, adopted the Agency's recommended findings and orders as amended, and ordered a psychological evaluation and reunification services for mother.

In its May 2019 status review report, the Agency requested that the court terminate mother's services. Mother continued to live a transient lifestyle and struggle with mental health and medication issues, and it was unknown whether she was using illegal substances. Mother's continuing belief that everyone was out to get her, and her accusatory and hostile demeanor, hindered her day-to-day functioning. Additionally, mother was not forthcoming and provided very little information to the Agency, often arguing that the requested information had nothing to do with her case. She was not comfortable with an exchange of information between the Gospel Center Rescue Mission and the Agency. Mother began exhibiting signs of liver failure.

While mother was participating in services at some level, she continued to have issues in all areas: she was falling asleep during counseling sessions; she had not made any changes outside of therapy; her absences from therapy put her in danger of being removed from the clinician's schedule; she was dismissed from Gospel Center Rescue Mission on December 19, 2018, for noncompliance (including sleeping during the day, not attending required classes, and not doing chores) and failed to take responsibility for her actions; and she moved from shelter to shelter and stayed at several substance abuse treatment programs despite denying having a drug problem. Mother's mental health records revealed that she was inconsistent both in reporting her symptoms and in adhering to her medication schedule.

Mother also struggled to adhere to the progressive visitation plan. Concerns about her visitation arose after it was reported that mother had minimal interaction with the minor and screamed at the minor when he did not listen to her. Mother reportedly

scratched the minor on the face when she tried to stop him from running away from her. She was observed sleeping in a chair during a visit while the minor played with visitation staff in the waiting room. When confronted, mother denied being asleep. Despite signing a progressive visitation plan on March 6, 2019, stating she would engage with the minor, remain alert during visits, and not take medication that would cause her to fall asleep, and despite receiving tips from the social worker as to how to better prevent the minor from leaving the visitation area, mother was observed sitting in the visitation room listening to music on her phone while the minor played by himself outside in the waiting room area. Mother repeatedly screamed at the minor to come back into the visitation room but did nothing to ensure he did so. Due to the number of visits missed by mother (approximately 20), the social worker requested that she provide some form of documentation to explain her absences, but mother refused to provide any documentation, telling the social worker it was none of her business. The social worker reported that mother's tendency to fall asleep during visits and appointments were possibly the result of the psychotropic medication mother was taking but could also mean mother was taking illegal substances. The report noted that documentation from the Gospel Center Rescue Mission indicated mother exited from the program in June 2018 due to "relapse." In addition, Gospel Center Rescue Mission staff informed the social worker that, prior to the minor's detention, mother was observed parked on the street smoking methamphetamine with the minor in the car.

Mother's psychological evaluator, Dr. Allison Paige Blankenship, reported that mother reported for her first appointment on January 30, 2019, but was unable to stay awake for the appointment. Mother reported she took Benadryl that morning causing her to be tired. Mother called the morning of her second appointment and asked to be rescheduled due to a kidney infection. Mother failed to provide documentation to confirm the reason for her absence despite the social worker's request. Following an appointment on April 3, 2019, Dr. Blankenship reported that mother's vague, defensive,

6

and inconsistent responses to many important questions interfered with Dr. Blankenship's ability to accurately and comprehensively identify diagnoses and make treatment recommendations. Dr. Blankenship opined that, given the severity of mother's symptoms, mother would need at least a year of weekly participation in mental health services to reach her treatment goals.

Meanwhile, the minor had adjusted well to placement with his adult half-sibling, his previously aggressive behaviors had greatly reduced over time, and he was learning to communicate more effectively. He continued to receive in-home services to help strengthen his social skills. The minor appeared comfortable with his caregiver, who was meeting all of his needs.

At the May 15, 2019 review hearing, the Agency requested a continuance in order to file a section 342 petition. The court granted the request and appointed a guardian ad litem for mother. The court also ordered mother to submit to a drug test. She refused and left the courtroom.

On June 10, 2019, the Agency filed a section 342 petition alleging new facts and circumstances relevant to the disposition of the dependency case, including facts regarding mother's history of substance abuse and her recent relapse. The petition included, among other things, a copy of mother's psychological evaluation report authored by Dr. Blankenship and notes from the Gospel Center Rescue Mission.

Mother did not appear for the June 12, 2019 review hearing. The Agency advised the court that mother was sending threatening messages to the social worker and had exhibited an escalation in concerning behavior. Mother's counsel argued mother might be "having some decompensation" due to the fact that she might be bypassed for services. The court continued the matter and suspended visits pending mother's appearance in court.

Mother appeared at the continued hearing on June 19, 2019, at which time the court granted the Agency discretion to allow mother supervised weekly visits and ordered

mother to submit to a drug test, advising her visits would be suspended if she tested positive. She failed to test as ordered.

At the July 31, 2019 contested hearing, the court received evidence of mother's July 1, 2019 positive drug test and two administrative positives due to mother's failure to test. Mother testified about her substance abuse history, stating she only ever used methamphetamine and marijuana and she tired of smoking marijuana in 2016 after her parental rights were terminated as to two of the minor's half-siblings. She admitted smoking methamphetamine on July 1, 2019, and stated she was currently in a substance abuse treatment program at Project Pride. She stated she did not feel she had a substance abuse problem and she used methamphetamine "one time" because her daughter's birthday was coming up and she was feeling "down and out." She also stated she was not using drugs when the minor was removed and claimed she had been clean since May 5, 2016. She called the report that she was smoking methamphetamine in the car with the minor "a blatant lie." When asked why she did not drug test on May 15, 2019, as ordered by the court, mother stated she was scared and confused and did not know what was happening. Mother testified she was taking prescribed medications -- Trazadone, Wellbutrin, Seroquel, Depakote, and Adderall -- and was seeking mental health treatment until she began reunification services. She claimed she did not drug test on June 19, 2019, as ordered by the court because she was still taking her medication which would have triggered a false positive test result. However, mother also testified she was not prescribed Adderall until June 20, 2019.

The court sustained the allegations in the section 342 petition, finding there was sufficient evidence of mother's unresolved substance abuse issues. The Agency filed a section 388 petition to retroactively bypass mother for services, submitting on its May 15, 2019 status review report. Over mother's objection, the court terminated mother's reunification services, set the matter for a section 366.26 hearing, and ordered supervised

8

visits so long as mother remained sober and active in the substance abuse treatment program.

On October 16, 2019, mother filed a petition pursuant to section 388 requesting that the court modify its previous order terminating her reunification services. Mother argued circumstances had changed as a result of her entry into the Project Pride program and her resulting sobriety, her visits with the minor and the bond that developed as a result, her compliance with mental health medication, and the fact that she had her own room in her recovery program where the minor could live with her. Mother also argued the requested modification -- placement of the minor with mother and continued services for mother -- was in the minor's best interest because she visited the minor and was bonded to him, she regularly spoke with him on the phone, and the minor exhibited behavior suggesting he wanted to be with mother. Mother attached documentation from Project Pride in support of her petition.

The Agency's November 2019 status review report recommended termination of mother's parental rights. While mother resided at Project Pride residential treatment facility, she continued to deny her previous chronic drug abuse despite her relapse on July 1, 2019. Nevertheless, since being in treatment, mother had been consistent with her supervised visits twice a month. The Agency reported that mother arrived on time to visits and was appropriate with the minor 85 percent of the time, offering him affection and playing with him. The caretaker reported the minor looked forward to visits with mother.

The minor remained under the care of his paternal adult half-sister, who he called "mom" and sought out for comfort, and who was committed to adopting him. The minor continued to work on strengthening his social and language skills to reduce his challenging behaviors and was bonded to his caretaker.

The November 2019 section 366.26 report again recommended termination of mother's parental rights and reiterated the facts set forth in the previous report.

9

On December 27, 2019, the juvenile court issued an order denying mother's section 388 petition without a hearing, stating: "There is no prima facie evidence to support the conclusionary statements of a changed circumstance. At best the evidence presented is that of the commencement of a changing situation for [mother]. Finally there is not a showing that granting the request is in the minor's best interest."

On January 8, 2020, mother's counsel informed the juvenile court that mother had been present but had left the courtroom without stating whether she intended to return. Counsel further informed the court that counsel had received some troubling e-mails from mother raising concerns about mother's mental stability and stating that mother did not trust her attorney and wanted to fire her. The court continued the contested section 366.26 hearing and set the matter for a *Marsden* hearing.[2]

Mother filed a timely notice of appeal of the juvenile court's order denying her section 388 petition.

## DISCUSSION

Mother contends the juvenile court erred in denying her section 388 petition without a hearing. She claims the petition set forth prima facie evidence of both a change in circumstances and that the requested modification would be in the minor's best interest. The claim lacks merit.

A petition to change or modify a juvenile court order under section 388 must factually allege that there are changed circumstances or new evidence to justify the requested order, and that the requested order would serve the minors' best interests. (*In re Daijah T.* (2000) 83 Cal.App.4th 666, 672.) The petitioner has the burden of proof on both points by a preponderance of the evidence. (Cal. Rules of Court,

---

[2] *People v. Marsden* (1970) 2 Cal.3d 118.

rule 5.570(h)(1)(D).)  In assessing the petition, the court may consider the entire history of the case.  (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.)

To decide whether a parent has met her burden under section 388, the juvenile court must consider such factors as the seriousness of the problem that led to the dependency, and the reasons for the problem's continuation; the degree to which the problem may be and has been removed or ameliorated; and the strength of the relative bonds between the dependent child and the child's parents or caretakers.  However, this list is not exhaustive.  (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1229.)

"A petition which alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point, does not promote stability for the child or the child's best interests."  (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.)  The petition must be liberally construed in favor of its sufficiency.  (Cal. Rules of Court, rule 5.570(a).)  Nonetheless, if the juvenile court finds that even so construed the petition fails to make a prima facie case as to either or both tests under section 388, the court may deny the petition without an evidentiary hearing.  (*In re Justice P., supra*, 123 Cal.App.4th at p. 189; *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1413-1414; *In re Zachary G.* (1999) 77 Cal.App.4th 799, 806; see Cal. Rules of Court, rule 5.570(d).)

The law is well settled that an appellate court reviews the denial of a section 388 petition for abuse of discretion.  (*In re S.R.* (2009) 173 Cal.App.4th 864, 870; *In re J.T.* (2014) 228 Cal.App.4th 953, 965.)

Mother argues she showed her circumstances had changed by demonstrating (1) she was in the Project Pride residential drug treatment program, (2) the program allowed for the minor to be placed with her, (3) she was complying with her mental health medication regimen, and (4) she attended most of the scheduled visits.  She added that her relationship with the minor was continuing to improve and that she spoke with

11

the minor almost daily and the minor did not want visits to end. Mother argues this information demonstrates her circumstances were "much different in December" than those which existed when her services were terminated on July 31, 2019.

As a preliminary matter, some of the general, conclusory averments in mother's petition lacked the specific allegations necessary to establish a change of circumstances. (*In re Edward H.* (1996) 43 Cal.App.4th 584, 593.) In any event, the record established that mother's circumstances were, at best, changing.

The Agency reported in May 2019 that mother continued to struggle in all aspects of her case plan, living a transient lifestyle, struggling with mental health and medication issues, possibly using illegal substances, having an accusatory and hostile demeanor toward the Agency and continuing to believe everyone was out to get her, withholding information from and arguing with the Agency, falling asleep during counseling, failing to take responsibility for her actions, failing to consistently adhere to her medication schedule or report symptoms, and failing to make changes outside of therapy. Mother exhibited concerning behaviors during visits with the minor as well, sometimes sleeping through visits and other times screaming at the minor. She missed approximately one-third of her scheduled visits and failed to provide documentation to explain her absences. In June 2019, mother began sending threatening messages to the social worker and exhibiting an escalation in concerning behavior resulting in suspension of visits. Following mother's psychological evaluation, Dr. Blankenship opined that, given the severity of mother's symptoms, mother would need at least a year of weekly and active participation in mental health services to reach her treatment goals.

Mother's refusal to drug test and her inconsistent statements regarding her drug use also caused concern. Mother refused to drug test several times despite the court's order to do so. She claimed she did not drug test on June 19, 2019, because she was taking medication (e.g., Adderall) that would have triggered a false positive, but then testified she was not prescribed Adderall until June 20, 2019. She tested positive on

12

July 1, 2019, and although she later admitted she had smoked methamphetamine, she denied she had a substance abuse problem and claimed she had been clean since May 2016. The documentation attached to mother's section 388 petition reflected that mother had only been enrolled in the Project Pride program for three months. While she resided at Project Pride, she continued to deny her previous chronic drug abuse despite her relapse on July 1, 2019, and despite her history of substance abuse giving rise to her prior dependency cases. As the Project Pride report noted, while mother had demonstrated growth, she still needed to "work on her emotional regulation, distress tolerance and anger management." At best, mother's petition showed her circumstances were changing.

Mother also argues her petition presented prima facie evidence that the requested change was in the minor's best interest by alleging she and the minor were bonded, they spoke regularly on the telephone and visited twice a month, and the minor looked forward to visits and had a "breakdown" when he was not able to see her.

But mother had a lengthy history of mental health issues, domestic violence, substance abuse, and homelessness. The minor was removed at the age of two after mother slapped him in the face, yelled and screamed at him, and dragged him forcefully by his arm. Visitation between mother and the minor was fraught with problems. As of May 2019, mother had minimal interaction with the minor and screamed at him when he did not listen to her. She scratched the minor on the face when she tried to stop him from running away from her. She slept in a chair while the minor played with visitation staff, listened to music on her phone while the minor played by himself in the waiting room area, and repeatedly screamed at the minor to come back into the visitation room. She missed 20 visits but refused to provide documentation to explain her absences. In June 2019, her visits were suspended due to the fact that she was sending threatening messages to the social worker and, according to her attorney, was "having some decompensation." These facts demonstrate that there had been little, if any, change in mother's behaviors or

13

progress toward reunification that would suggest it was in the minor's best interest to place him with mother at Project Pride and provide mother with additional services.

Mother argues that, due to her deep and bonded relationship with the minor, "even a modest change in [mother's] circumstances mandated the juvenile court to hold an evidentiary hearing" on her section 388 petition. We disagree. Even assuming mother's circumstances had greatly improved over the past several months since having her services terminated, the child's best interests "are not to further delay permanency and stability in favor of rewarding" the parent for her "hard work and efforts to reunify." (*In re J.C.* (2014) 226 Cal.App.4th 503, 527.) Further, the deep bond mother describes is not evident from the record. While the minor's caretaker reported he looked forward to visits with mother, there is nothing in the record to suggest the minor experienced any negative behaviors when leaving visits with mother or when he was unable to visit with her. What is clear from the record is the bond between the minor and his caretaker, who he sought out for comfort and referred to as "mom" and with whom he was thriving.

We conclude the juvenile court did not abuse its discretion in denying mother's section 388 petition without a hearing.

DISPOSITION

The juvenile court's order is affirmed.

/S/
_____
MAURO, J.

We concur:


/S/
_____
ROBIE, Acting P. J.


/S/
_____
KRAUSE, J.

14